**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA, for the use and benefit of SCIF PARTNERS GROUP, INC.,** ) ) ) ) | |
| *Plaintiff*, ) ) | Case No.: _____ |
| v. ) ) ) | |
| **CHEROKEE INSURANCE COMPANY,** ) ) | |
| *Defendant*. ) ) | |

## COMPLAINT

Plaintiff United States of America, for the use and benefit of SCIF Partners Group, Inc. ("**SPG**"), hereby files this Complaint against Defendant Cherokee Insurance Company ("**Cherokee**") and, in support thereof, states as follows:

### NATURE OF ACTION

1.      This action is brought pursuant to the Miller Act, 40 U.S.C. § 3131 *et seq.*, to recover against a payment bond posted by RB Construction Company ("**RB Construction**"), as principal, and Cherokee, as surety, in connection with a federal construction project at the Robert A. Young Federal Building in St. Louis, Missouri. SPG, a subcontractor on that project, has fully performed its obligations under a written subcontract with RB Construction but has not been paid $85,633.90 for its labor and services—despite the federal government having approved SPG's invoices and fully paying RB Construction for those invoices. Like RB Construction, Cherokee has ignored SPG's repeated attempts to receive payment for work performed on this project.

## PARTIES

2.      SPG is a Virginia corporation with a principal office at 223 S. Poes Road, Amissville, Virginia, 20106-4118.

3.      Cherokee is a Michigan property and casualty insurance company with a principal office at 34200 Mound Road, Sterling Heights, Michigan 48310.

## JURISDICTION & VENUE

4.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically 40 U.S.C. § 3133(b).

5.      Venue is proper pursuant to 40 U.S.C. § 3133(b) because the relevant contract was to be performed and executed in St. Louis, Missouri.

## FACTUAL ALLEGATIONS

### A.  *The Project and Payment Bond*

6.      Around April 22, 2024, the United States of America, acting through the U.S. General Services Administration (the "**GSA**"), awarded RB Construction a contract, identified by Contract No. 47PG0224F0035, to rebuild the U.S. Transcom Office located at the Robert A. Young Federal Building at 1222 Spruce Street, St. Louis, Missouri, 63103 (the "**Project**").

7.      As required by 40 U.S.C. § 3131(b), RB Construction executed a Payment Bond with Cherokee, identified by Bond No. SB240017, in the penal sum of $2,053,226.37 (the "**Bond**").  Under the Bond, RB Construction is the principal; Cherokee is the surety; and the United States of America is the obligee.  Attached as **Exhibit A** is a true and correct copy of the Bond.

8.      The Bond obligates RB Construction and Cherokee, jointly and severally, to make prompt payment to all persons having a direct relationship with RB Construction who furnished labor, material, or both in the prosecution of the work provided for in the prime contract.

**B. *The Subcontract with SPG***

9.      Under the prime contract, RB Construction was responsible for hiring and supervising all subcontractors necessary to complete the Project.  RB Construction identified and sought SPG as one such subcontractor.

10.      In May 2024, SPG and RB Construction began negotiating a written subcontract under which SPG would provide RB Construction with construction administration, oversight, and testing services for the Project.

11.      On May 15, 2024, RB Construction emailed SPG a draft subcontract containing proposed revisions and asked SPG whether that draft was "acceptable."

12.      SPG responded to that email one day later, generally accepting the revisions proposed by RB Construction but proposing one minor change.  In that email, SPG attached its proposed version of the subcontract, which included that one change.

13.      On May 22, RB Construction responded by stating it was "fine with this change" and instructing SPG to "sign and return" to RB Construction the subcontract last sent by SPG.

14.      As instructed by RB Construction, SPG signed and returned the agreed-upon version of the subcontract (the "**Subcontract**") one day later, creating an enforceable agreement between those two parties.  Attached as **Exhibit B** is a true and correct copy of the Subcontract.

15.      Under the Subcontract, RB Construction agreed to pay SPG approximately $149,350.00 in exchange for the various services provided by SPG.

16.      The services provided by SPG included, among other things, overseeing construction of an "Area of Special Construction" for the Project; exercising final responsibility and decision authority over installation means and methods within that area; providing consultation services; conducting RF/STC testing; reviewing submittals; attending project

meetings in person; and coordinating the construction schedule with RB Construction's site manager and project team.

17.     Although the Subcontract required SPG to conduct RF/STC testing, the Subcontract did not require SPG to guarantee either (i) a particular result or outcome of such testing or (ii) any accreditation or approval of the Project by any government agency.  Likewise, SPG never represented to RB Construction that its services would guarantee a particular result, outcome, or accreditation.  Instead, the parties agreed that SPG would be responsible solely for performing the RF/STC testing identified in the Subcontract.

18.     The Subcontract also includes payment terms addressing progress payments that RB Construction must make to SPG for the labor, material, and other services rendered.

19.     The Subcontract further states that, before being obligated to pay for SPG's work, RB Construction must receive payment from the GSA.  The Subcontract then requires RB Construction to pay SPG within ten days of RB Construction receiving payment from the GSA.

20.     The Subcontract does not condition SPG's payment on (i) a particular result or outcome of the RF/STC testing or (ii) any accreditation or approval by any government agency.

### C. SPG's Performance of Subcontract Obligations

21.     After signing the Subcontract and returning it to RB Construction, SPG fully performed the agreed-upon scope of work and furnished the labor, material, and other services required by the Subcontract's terms.

22.     Throughout SPG's performance, RB Construction—through its project manager Carmen Rymer and its superintendent Matthew Hancock—coordinated and supervised SPG's work daily, scheduling SPG's on-site visits, coordinating site access, reviewing and approving SPG's submissions, and so on.

23. At no point during SPG's performance did Ms. Rymer, Mr. Hancock, or anyone else from RB Construction dispute the quality, scope, or timeliness of SPG's work or challenge the Subcontract's validity. Instead, RB Construction accepted and retained the various services furnished by SPG pursuant to the Subcontract.

24. Additionally, and in accordance with the Subcontract's invoicing and submission requirements, SPG submitted the following invoices to RB Construction for the work completed by SPG, which collectively total the agreed-upon sum of $149,350:

   a. Invoice #1808R (May 31, 2024) – $20,740.00

   b. Invoice #1824R (June 27, 2024) – $16,030.00

   c. Invoice #1985 (February 28, 2025) – $7,128.00

   d. Invoice #1996 (March 31, 2025) – $7,128.00

   e. Invoice #2025 (April 30, 2025) – $6,345.00

   f. Invoice #2040 (May 31, 2025) – $6,345.00

   g. Invoice #2053 (June 25, 2025) – $27,352.00

   h. Invoice #2072 (July 29, 2025) – $20,830.00

   i. Invoice #2090 (August 21, 2025) – $8,058.10

   j. Invoice #2103 (September 30, 2025) – $29,393.90

25. On April 29, 2025, RB Construction remitted to SPG a partial payment of the foregoing invoices and, on August 5, 2025, remitted another partial payment to SPG.

### D. RB Construction's Refusal to Pay

26. Despite remitting these partial payments, RB Construction has not fully paid the foregoing invoices and still owes SPG $85,633.90 for the work performed under the Subcontract.

27.     On January 6, 2026, SPG's counsel sent RB Construction a written demand for payment of the remaining balance and notice of SPG's rights under the Miller Act, 40 U.S.C. § 3131 *et seq*.  *See* **Exhibit C**.

28.     One day later, RB Construction's controller, Raymond S. Moran, responded.  In that response, Mr. Moran did not dispute either (i) the quality, scope, or timeliness of SPG's work; (ii) the validity or enforceability of the Subcontract; (iii) SPG's performance of RF/STC testing; or (iv) any deficiency in testing results or lack of accreditation.

29.     Instead, Mr. Moran acknowledged the outstanding balance owed to SPG and apologized for RB Construction's late payment, stating that such payments would "be sent when the funds become available."  *See* **Exhibit D**.

30.     But the funds were already available.  Back on December 11, 2025, the GSA confirmed that it approved all of SPG's invoices and fully paid RB Construction for those invoices. *See* **Exhibit E**.  RB Construction was therefore required to remit payment to SPG within ten days of receiving those funds, per the Subcontract's payment terms.  It never did so.

### E.  The Bond Claim

31.     On February 19, 2026, SPG submitted a claim against the Bond to Cherokee, supported by documentation including copies of the Subcontract, the unpaid invoices, the GSA's confirmation of payment to RB Construction, and RB Construction's acknowledgment of the debt. *See* **Exhibit F**.

32.     Receiving no response from Cherokee, SPG's counsel sent Cherokee an additional letter on March 6, which again presented SPG's claim, provided various supporting documents, and asked Cherokee to confirm receipt of the claim and provide a timeline for review and resolution of the claim.  *See* **Exhibit G**.

33.     To date, and despite repeated attempts to contact Cherokee, neither SPG nor its counsel has received any response from Cherokee regarding SPG's bond claim.

### F. RB Construction's Pretextual Excuse for Non-Payment

34.     After completing the Project, RB Construction hoped the Project would receive a specific accreditation from the Defense Intelligence Agency (the "**DIA**").

35.     On March 10, 2026, the DIA notified RB Construction that it would not issue the accreditation for the Project sought by RB Construction.

36.     Two days later—and for the first time—RB Construction informed SPG that this accreditation denial somehow justified withholding payment from SPG.

37.     Nearly six months elapsed between SPG completing its work under the Subcontract and RB Construction's excuse for non-payment.  And not once did RB Construction identify accreditation as a condition precedent to payment.  This sudden invocation of accreditation as a basis for nonpayment is therefore entirely pretextual.

38.     Instead, RB Construction—falsely—claimed that the GSA was not paying RB Construction because of the denied accreditation and that RB Construction would not pay SPG until the GSA paid RB Construction.  But again, back in December 2025, the GSA confirmed that it approved all of SPG's invoices and fully paid RB Construction for that work.  *See* Ex. E.

39.     Moreover, accreditation is not a payment condition under the Subcontract.  RB Construction's belated reliance on accreditation denial cannot excuse or justify its failure to pay SPG for labor and services already fully performed, supervised by RB Construction, and accepted by RB Construction.

### COUNT I
### Miller Act Claim

40.     SPG incorporates by reference the foregoing paragraphs as if fully set forth herein.

41.    At all times relevant hereto, SPG had a direct contractual relationship with RB Construction, the principal on the Bond.

42.    SPG furnished labor and services in carrying out work provided for in the prime contract awarded to RB Construction by the GSA.

43.    Specifically, SPG's work on the Project included on-site supervision and oversight of the construction of the Area of Special Construction, on-site RF/STC testing, on-site inspections, and other labor and services directly in furtherance of the prime contract.

44.    RB Construction and Cherokee executed the Bond in connection with the prime contract, and the Bond obligates Cherokee to ensure prompt payment to persons furnishing labor or material under the prime contract, such as SPG.

45.    RB Construction has failed to pay SPG $85,633.90 for labor and services furnished on the Project, despite having received full payment from the GSA for that work and multiple written demands from SPG.

46.    Cherokee's obligation under the Bond has been triggered by RB Construction's failure to pay SPG for its labor and services.

47.    Cherokee has received SPG's written claims against the Bond but has failed and refused to acknowledge, investigate, or resolve SPG's claim. Cherokee therefore has taken no action to satisfy the Bond obligation despite having received detailed documentation supporting SPG's entitlement to payment.

48.    All conditions precedent to maintaining this action under the Miller Act have been satisfied, including the ninety-day waiting period prescribed by 40 U.S.C. § 3133(b)(1).

49.    Cherokee's failure to pay has directly and proximately damaged SPG in the amount of at least $85,633.90, plus interest, attorney's fees, and costs as allowed by law.

**WHEREFORE**, Plaintiff, the United States of America for the use and benefit of SCIF Partners Group, Inc., respectfully asks this Court enter judgment in favor of Plaintiff and against Defendant Cherokee Insurance Company as follows:

A.  Award SPG compensatory damages in an amount to be proven at trial, including at least $85,633.90 plus any other amounts, fees, and costs recoverable under applicable law; and

B.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**UNITED STATES OF AMERICA**
**for the use and benefit of**
**SCIF PARTNERS GROUP, INC.**
**By Counsel**

Dated:  May 14, 2026


/s/ Philip J. Christofferson
Philip J. Christofferson, Bar #50134 (MO)
COCKRIEL & CHRISTOFFERSON, LLC
3660 South Geyer, Suite 320
St. Louis, Missouri 63127
Telephone: (314) 821-4200
Facsimile: (314) 821-4264
Email: pchristofferson@cockriel.com

Kevin J. Daniel, Bar #82911 (VA) (*pro hac vice* motion to be submitted)
Jeremy S. Zimmerman, Bar #100474 (VA) (*pro hac vice* motion to be submitted)
TROXELL LEIGH P.C.
50 Catoctin Circle, NE, Suite 325
Leesburg, Virginia 20176
Telephone: (703) 777-4000
Facsimile: (703) 777-4001
Email: kdaniel@tllawpc.com
        jzimmerman@tllawpc.com

*Counsel for Plaintiff United States of America*
*for the Use and benefit of SCIF Partners Group, Inc.*